UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 26-mj-56 (JNE/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S** |
| v. | ) **CONSOLIDATED RESPONSE** |
| | ) **IN OPPOSITION TO** |
| CHRISTINA RANK, | ) **DEFENDANT'S MOTION TO** |
| | ) **DISMISS AND REQUEST FOR** |
| Defendant. | ) **HEARING AND BILL OF** |
| | ) **PARTICULARS** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and William L. Richards, Special Assistant United States Attorney, hereby submits its response to Defendant's motions to dismiss, requests for hearing, additional discovery and bill of particulars. The United States is entitled to denial of the motions because the Information is facially sufficient, the charged offense is supported by probable cause, provides Defendant with adequate notice, and the Defendant's remaining claims seek impermissible pretrial litigation of factual issues reserved for trial. Accordingly, Defendant's motion should be denied in its entirety.

## I. RULE 12 DOES NOT PERMIT PRETRIAL RESOLUTION OF FACTUAL DISPUTES OR EVIDENTIARY SUFFICIENCY

A motion to dismiss under Rule 12 is limited to questions of law that

1

can be resolved without a trial on the merits. Fed. R. Crim. P. 12(b); *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016). Federal criminal procedure provides no mechanism analogous to civil summary judgment. *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025). Accordingly, courts may not weigh evidence, assess witness credibility, resolve factual disputes, or determine whether the Government can ultimately prove its case beyond a reasonable doubt. *Id.*

Defendant's motion repeatedly asks the Court to do exactly what Rule 12 prohibits. Defendant requests that the Court interpret video footage, assess the credibility of law enforcement officers, determine whether Special Agent Berger accurately described the collision, evaluate competing factual narratives, and conclude that the Government's evidence is insufficient to sustain a conviction. Those issues are factual questions reserved for trial.

Defendant's challenge is particularly improper because the alleged disputes are intertwined with the merits of the charged offense. Whether Defendant blocked the officers' vehicle, entered the opposing lane of travel, interfered with federal officers, caused the collision, or otherwise violated 18 U.S.C. § 111 are factual questions for a jury. Rule 12 does not permit pretrial adjudication of such issues.

Defendant likewise improperly seeks dismissal based on an asserted lack of probable cause. The Information is not subject to a freestanding probable

cause challenge. Where the Government proceeds by Information, issues relating to probable cause and guilt ultimately merge for trial. *United States v. Funk*, 412 F.2d 452, 455 (8th Cir. 1969).

Moreover, the Information is facially sufficient. A sufficient information contains a plain, concise, and definite written statement of the essential facts constituting the offense charged, fairly informs the defendant of the charge, and permits the defendant to plead double jeopardy in a future proceeding. Fed. R. Crim. P. 7(c); *United States v. Tebeau*, 713 F.3d 955 (8th Cir. 2013); *United States v. LaTourell*, No. 20-MJ-0687 (WMW/LIB), 2021 WL 2177595 (D. Minn. May 28, 2021). An indictment or information is ordinarily sufficient if it tracks the statutory language. *United States v. Prelogar*, 996 F.3d 526, 531-32 (8th Cir. 2021); *United States v. Jawher*, 950 F.3d 576, 579 n.2 (8th Cir. 2020).

Here, the Information tracks the language of 18 U.S.C. § 111(a)(1), identifies the offense, identifies the relevant time period, and provides constitutionally adequate notice. See *United States v. Lopez*, No. 25-230 (JRT/DJF), 2026 WL 207356, at *3 (D. Minn. Jan. 27, 2026*); United States v. Huggans*, 650 F.3d 1210, 1217-18 (8th Cir. 2011); *United States v. Olderbak*, 961 F.2d 756, 759-60 (8th Cir. 1992).

Defendant's arguments depend upon disputed facts and evidentiary sufficiency rather than legal defects in the charging document. Rule 12

provides no basis for dismissal on those grounds. Moreover, as in *Lopez*, an accusatory instrument for 18 U.S.C. § 111 that tracks the statutory language is legally sufficient. Defendant is using Rule 12 as a pretrial vehicle for evidentiary analysis instead of identifying actual defects in the Information. Since this is improper under Rule 12, Defendant's request should be denied.

## II. THE INFORMATION PROPERLY ALLEGES MULTIPLE BASES FOR LIABILITY UNDER 18 U.S.C. § 111(a)(1)

The Information properly alleges that Defendant forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with federal officers engaged in official duties. 18 U.S.C. § 111(a)(1) expressly criminalizes each of those alternative forms of conduct.

Defendant focuses almost exclusively on the assault theory while largely ignoring the remaining statutory alternatives. That approach is legally irrelevant. The Government may plead statutory alternatives in the conjunctive and prove any one of them at trial. *United States v. Mohr*, 728 F.2d 1132, 1135 (8th Cir. 1984); U*nited States v. Haymes*, 610 F.2d 309 (5th Cir. 1980); *United States v. McCann,* 465 F.2d 147, 162 (5th Cir. 1972).

Even if Defendant disputes whether certain conduct constitutes assault, the Information remains sufficient because it alleges multiple statutory bases for liability under § 111(a)(1). In any event, whether the evidence ultimately establishes assault, resistance, opposition, impediment, intimidation,

4

interference, or some combination thereof is a question reserved for trial. Therefore, Defendant's motion on these grounds should be denied in its entirety.

## III. THE BERGER AFFIDAVIT ESTABLISHES PROBABLE CAUSE

The factual allegations alleged in the Information and incorporated Affidavit in Support of the Criminal Complaint by Department of Homeland Security Investigations Special Agent Richard Berger (hereinafter "Berger Affidavit") are sufficient to establish probable cause. Defendant seeks an evidentiary hearing based upon allegations that the Berger Affidavit contains purportedly false statements and that governmental misconduct occurred. The record does not support either claim.  No such hearing is warranted or legally appropriate under the circumstances.

The Government's evidence which includes objective surveillance video recovered depicting the evidence, video evidence recorded by law enforcement officers present during the incident, recorded interviews from law enforcement witnesses, and the Defendant's own post-*Miranda* recorded statements, corroborate the Berger Affidavit and the factual basis supporting the charge.

Defendant's subjective disagreement with Berger's characterization of portions of the incident does not establish deliberate falsity, reckless disregard for the truth, or government misconduct. At most, Defendant raises factual disputes regarding interpretation of evidence and is seeking to utilize a

disputed characterization of video surveillance for pre-trial dismissal. Such attempts raise factual disputes concerning the interpretation of evidence, which are matters more properly ripe for consideration by a trial-jury and cross-examination, not through a pretrial motion to dismiss.

Defendant further has not made the substantial preliminary showing necessary to justify an evidentiary hearing. Defendant claims that the Exhibits previously submitted by Defendant (one of which is only approximately 31 seconds, instead of the approximately 3:00 minutes of relevant conduct) depict "Ms. Rank's vehicle as being in a marked, left-turn only lane and the government vehicle making a left turn from the outside lane, without a turn signal, and crossing in front of Mr. Rank's vehicle supports the claim the affidavit contains false statements". ECF 48, at page 4. However, the objective evidence directly contradicts Defendant's characterization of the events.

Defendant asserts that the Berger Affidavit contains false statements and questions the basis for those statements. The Berger Affidavit itself, however, expressly identifies the sources upon which it relied. Specifically, the Affidavit states, "This affidavit is based on my personal knowledge, as well as information I have learned from other law enforcement officers and the review of reports, written materials, and recordings at the time of the affidavit". Berger Affidavit, paragraph 4, page 2.

Defendant's argument rests on assumptions and interpretations of

evidence that are unsupported by the record. Defendant appears to allege some type of impropriety regarding the Berger Affidavit containing statements relating to a review of video evidence, in conjunction with claiming video surveillance footage wasn't recovered until days after the Berger Affidavit was filed. However, video footage captured by law enforcement during the incident, the reports created through the investigation, audio recording of interviews, and written materials and provided to Defendant in discovery were available to SA Berger at the time of the filing of the Berger Affidavit. Such information formed the basis for the claims relating to video footage outlined in the Affidavit.

The fact that video surveillance was provided by Defendant to the Government after the filing of the Affidavit does not negate the existence and reliance of the law enforcement reports, audio and video recordings, written materials were reviewed and relied upon for the drafting and submission of the Berger Affidavit. Moreover, the Affidavit explicitly states what it was based upon. This does not establish intentional falsity, reckless disregard for the truth, or misconduct by SA Berger. Rather, Defendant's argument appears to rest on a misunderstanding of the nature and timing of the materials available to law enforcement at the time the Affidavit was prepared. Accordingly, Defendant has not made the substantial preliminary showing necessary to warrant an evidentiary hearing or any further relief.

The Affidavit further asserts that Defendant "drove into the oncoming lane" or "into the opposite lane in front of the DO's car" to cause the collision, however, according to Defendants characterization of the video, this is simply a false statement and purportedly misconduct.

However, that is exactly what the objective video surveillance depicts. As shown below, Defendant, in the white car, is clearly in the lane which is opposite traffic and in front of the law enforcement vehicle. The officer's vehicle is in the median lane with Defendant's car to the left, the wrong lane, against traffic. Recovered video surveillance further depicted the officer's attempt to make a left turn back into the same parking lot that they started from, Defendant's car invading the opposite lane that is not a one-way roadway, cut across marked lines in the roadway, blocking the officers from entering the lot, and causing the collision (depicted below and on next page).







Even if Defendant disputes portions of the Affidavit's phrasing, the remaining objective evidence, including the *Defendant's own words in a post-Miranda recorded statement*, independently supports probable cause and the charged offense. Defendant admitted during her recorded post-*Miranda* interview that she observed and intentionally interacted with federal law enforcement officers during the incident. The following excerpts are derived from Defendant's recorded post-*Miranda* interview and audio recordings produced in discovery in full:

Defendant (04:15–04:21): "If I wasn't paying attention, I could have hit his car. He could've, he could've arrested me for tailgating."

When asked whether she was tailgating the officers, Defendant responded:

Defendant (04:30–04:35): "I was trying to get him away from school property, so yeah."

Defendant further acknowledged that the officer was stationary and that she engaged in horn use to draw attention to his presence:

Defendant (05:20–05:35): "He was just sitting in his car and I was honking my horn to make it known that he was there… and hopefully they would have heard it and not come out."

Defendant made explicit statements regarding her view of federal officers:

Defendant (06:13–06:15): "ICE is not law enforcement, ICE is terrorists."

Defendant confirmed that she placed her vehicle in front of the officer's vehicle and acknowledged she was warned:

Defendant (06:40–06:51): "When I put my car in front of his… he told me, this is your last warning."

When asked whether officers issued commands, Defendant initially stated they did not properly identify themselves, but later acknowledged they did:

Agent (07:00–07:06): "Did they announce themselves as police and ask you to get out of the car?"
Defendant: "No they did… they are terrorists."
Agent (07:15): "So yes, they did?"
Defendant: "Yes, they did."

Defendant then admitted she positioned her vehicle to block the officers:

Defendant (08:20): "I moved from my car from behind him in front of his to block him and the entryway."

When asked whether she intended to block access, Defendant confirmed:

Agent (10:20): "So you were going to block him?"
Defendant: "So I gotta block him."
Agent: You were blocking a federal law enforcement officer?

10

Defendant: "Shrugged"

Defendant further acknowledged the inevitability of enforcement consequences:

Agent: "If you don't like Hennepin County Sheriff being somewhere and if you block Hennepin County Sheriff… would they arrest you?"
Defendant: "Yes."
Agent: Does that mean you should block them in?
Defendant: "They can arrest me"

Finally, Defendant justified her conduct as protective in nature:

Defendant (11:50–12:04): "I had to protect my students and my staff… he needs to not be there at all."

Taken together with the surveillance footage and the positioning of the officers' vehicle, Defendant's recorded statements corroborate the Government's account of the incident and independently support probable cause. Defendant admitted that she intentionally positioned her vehicle to block the officers from entering the parking lot and interfere with their movement.

Defendant's admissions further corroborate the Government's theory that she intentionally interfered with federal officers engaged in the performance of their official duties. Defendant also acknowledged during her recorded interview that similar conduct directed toward another law enforcement agency could result in arrest. These admissions independently corroborate the factual basis set forth in the Berger Affidavit and further demonstrate that the Affidavit is not materially false or misleading.

11

Even assuming Defendant disputes certain descriptive phrasing in the affidavit, the core factual assertions supporting probable cause are independently verified by Defendant's own statements and the objective video evidence. There is therefore no basis for a *Franks*-type hearing, no basis for a suppression type inquiry, no basis for expanded discovery, and ultimately no basis for dismissal. As the evidence affirmatively corroborates the challenged affidavit and Defendant cannot make the required substantial preliminary showing of intentional or reckless falsity. Therefore, Defendant's request for relief should be denied in its entirety.

## V. LAWFUL GOVERNMENT CONDUCT DOES NOT WARRANT DISMISSAL, DISCOVERY, OR AN EVIDENTIARY HEARING

The Government's conduct was lawful, routine, and well within constitutional limits. Defendant cannot establish outrageous government conduct because the record demonstrates neither government creation of criminal activity nor coercion of Defendant's will. Instead, the evidence shows officers engaged in a lawful immigration enforcement operation while Defendant independently initiated and escalated the conduct underlying the charged offense. Accordingly, Defendant is not entitled to dismissal, discovery, or an evidentiary hearing.

The outrageous government conduct doctrine is an "extraordinary

remedy" reserved for only the "narrow band of the most intolerable government conduct," and applies only where the Government either created the crime or coerced the defendant's will. *United States v. King*, 351 F.3d 859, 867 (8th Cir. 2003); *United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016) (*citing United States v. Russell*, 411 U.S. 423, 432 (1973)). The doctrine is limited to conduct that is "so shocking, outrageous, and clearly intolerable that it offends the universal sense of justice." *Russell*, 411 U.S. at 432.

Courts routinely reject such claims where the defendant is a voluntary participant rather than a coerced actor. *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). The doctrine has been rejected even where government involvement was substantially greater than alleged here. See *United States v. Hunt*, 171 F.3d 1192, 1195 (8th Cir. 1999); *United States v. Simpson*, 813 F.2d 1462, 1465 (9th Cir. 1987). It applies only in extraordinary circumstances where the Government effectively creates and controls the criminal enterprise. See *United States v. Twigg*, 588 F.2d 373, 375–76, 382 (3d Cir. 1978).

## A. The Government Did Not Create, Induce, or Manufacture Criminal Conduct

The Government did not create, induce, or manufacture the charged conduct. Under *King*, outrageous government conduct requires government creation of the crime or coercion of the defendant's will. 351 F.3d at 867. The

record establishes neither.

On January 12, 2026, ICE Enforcement and Removal Operations officers were conducting a lawful immigration enforcement operation in Inver Grove Heights, Minnesota. Defendant independently initiated the encounter by approaching the officers, yelling at them, and repeatedly honking her horn while referring to them as "terrorists" and "Nazis." When officers attempted to depart, Defendant escalated the encounter by following their vehicle on public roadways. Surveillance video depicts Defendant continuing the pursuit, driving into the opposing lane of travel, cutting off the officers' SUV, blocking its entry into a parking lot, and causing a collision.

At no point did officers approach Defendant, solicit her involvement, direct her conduct, encourage unlawful behavior, or induce any action underlying the charged offense. Every material act giving rise to the charge including the approach, pursuit, lane deviation, blocking maneuver, and collision originated with Defendant's own decisions.

This case bears no resemblance to United States v. Twigg, where the government conceived, financed, supplied, and controlled the entire criminal enterprise. 588 F.2d 373, 375-76, 382 (3d Cir. 1978). Nor does it resemble the substantially greater governmental participation rejected as insufficient in United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999), or United States v. Simpson, 813 F.2d 1462, 1465 (9th Cir. 1987). Unlike those cases, officers

14

here did not furnish instrumentalities, utilize informants, participate in criminal activity, or create a criminal enterprise. They merely performed assigned law-enforcement duties and responded to conduct which Defendant independently initiated.

Defendant's recorded post-*Miranda* admissions independently confirm she knowingly approached federal officers, understood their identity, followed them, and intentionally positioned her vehicle to block their movement and entryway. Those admissions foreclose any claim that the Government created the charged conduct. Accordingly, Defendant's claim should be denied in its entirety.

## B. Defendant's Admissions Confirm She Was Not Coerced

The Government likewise did not coerce Defendant's will. *King*, 351 F.3d at 867. Defendant's recorded statements independently establish the opposite. Defendant's own recorded post-Miranda statements confirm that she knowingly approached federal immigration officers, understood who they were, followed their vehicle, used her horn to draw attention to their presence, and intentionally positioned her vehicle to block their movement. Defendant further acknowledged that similar conduct directed at another law-enforcement agency could result in arrest.

These admissions establish that Defendant acted knowingly,

voluntarily, and intentionally. They eliminate any plausible claim that officers pressured Defendant, threatened her, compelled her actions, or otherwise overbore her will. Defendant identifies no threat, promise, deception, or coercive tactic employed by law enforcement. Instead, the record reflects a series of independent choices made by Defendant herself.

Courts routinely reject outrageous government conduct claims where the defendant is an active, voluntary participant rather than a coerced actor. *United States v. Asibor*, 109 F.3d 1023, 1039 (5th Cir. 1997). That principle applies directly here. Defendant's own words demonstrate that she voluntarily initiated and escalated the encounter. Accordingly, Defendant's request should be denied.

**C. The Government's Conduct Reflects Routine Law Enforcement Activity**

The Government's conduct reflects routine immigration-enforcement activity that falls squarely within accepted law-enforcement practice and far outside the narrow category of conduct capable of violating due process. Routine investigative and enforcement techniques do not constitute outrageous government conduct. *United States v. Combs*, 827 F.3d 790, 794-95 (8th Cir. 2016). Likewise, lawful enforcement activity does not violate due process merely because a defendant disagrees with law-enforcement objectives

16

or tactics. *United States v. Russell*, 411 U.S. 423, 432 (1973).

The conduct challenged here consists of officers in uniform, during official work hours, in a government vehicle performing an immigration-enforcement operation, maintaining surveillance, traveling on public roadways, identifying themselves as law enforcement officers, attempting to disengage from an escalating confrontation initiated by Defendant, issuing lawful commands, and ultimately making an arrest based upon Defendant's conduct. These are ordinary law-enforcement functions performed daily by federal officers.

Nothing about these actions is extraordinary, conscience-shocking, or fundamentally unfair. Unlike *Twigg*, officers did not create criminal activity. Unlike *Hunt* and *Simpson*, officers did not engage in substantially greater participation that courts nevertheless found constitutionally permissible. Compared to those cases, the conduct challenged here falls comfortably within accepted law-enforcement practice. To the extent Defendant objects to immigration-enforcement policies or priorities, those concerns are legally irrelevant. The inquiry focuses on the conduct of officers in this case, not Defendant's disagreement with federal enforcement activities. See *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992). Accordingly, the challenged conduct does not approach the constitutional threshold required for dismissal.

17

**D. The Officers Were Acting in the Performance of Their Official Duties**

The evidence establishes officers were acting within the "performance of official duties" under 18 U.S.C. § 111 throughout the encounter and were not engaged in a "personal frolic."

For purposes of 18 U.S.C. § 111, an officer acts within the performance of official duties when acting within the scope of what the officer is employed to do rather than pursuing a purely personal endeavor. *United States v. Street*, 66 F.3d 969, 978 (8th Cir. 1995); *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir. 1967). Courts broadly construe the phrase to protect federal officers and facilitate the accomplishment of federal functions. *Street*, 66 F.3d at 978; *United States v. Green*, 927 F.2d 1005, 1007 (7th Cir. 1991). The inquiry is functional, not formalistic, and focuses on whether the officer was engaged in law enforcement duties rather than a personal endeavor. *Heliczer*, 373 F.2d at 245. Official duties are not limited to arrests but include a broad range of investigative, surveillance, and enforcement activities. *Id*. Section 111 further protects officers who are assaulted because of the performance of their official duties. *United States v. Heck*, 499 F.2d 778 (9th Cir. 1974).

Here, the officers were engaged in an official immigration enforcement operation at all relevant times. They were conducting surveillance and

18

enforcement activities as part of assigned duties with ICE Enforcement and Removal Operations in Inver Grove Heights, Minnesota. They were operating government vehicles, acting pursuant to statutory authority, and performing active federal enforcement functions in public.

Federal immigration officers are statutorily authorized to make arrests for offenses committed in their presence. 8 U.S.C. § 1357(a)(5). The conduct at issue including working within a lawful operation, monitoring individuals in public areas, traveling on public roadways, identifying themselves as law enforcement officers, attempting to disengage from an escalating confrontation, and taking enforcement action following Defendant's conduct all fall squarely within the duties ICE officers are employed to perform.

Critically, Defendant herself admitted she knew the individuals involved were federal immigration officers at the time of the encounter. That admission independently confirms the officers were engaged in official federal duties and not acting in any private or personal capacity. There is no evidence that the officers were acting outside the scope of employment or engaged in any personal endeavor. Every aspect of the encounter arose directly from assigned federal enforcement responsibilities. Accordingly, the officers were acting within the performance of their official duties under § 111 and controlling precedent.

### E. No Evidentiary Hearing or Additional Discovery is Warranted

No evidentiary hearing or additional discovery is warranted because Defendant cannot establish either *King* prong or any material factual dispute. A hearing is not required where even accepted allegations fail to establish a constitutional violation. *Combs*, 827 F.3d at 794–95. Here, Defendant identifies no evidence of government creation of crime, coercion, or conscience-shocking conduct. The record instead confirms routine law enforcement activity and Defendant's voluntary escalation, corroborated by her own admissions. Since Defendant cannot satisfy the governing legal standard as a matter of law, her requests must be denied.

The record reflects routine and lawful law enforcement activity, fully corroborated by Defendant's admissions and objective evidence. Defendant's arguments rest on disputed factual characterizations reserved for trial. Accordingly, Defendant cannot establish outrageous government conduct, and she is not entitled to dismissal, discovery, or an evidentiary hearing. Defendant's motion should be denied in its entirety.

## VI. DEFENDANT IS NOT ENTITLED TO A BILL OF PARTICULARS

The Government has provided Defendant with a factual basis for the charge and constitutionally adequate notice of the charge and Defendant is not entitled to a bill of particulars because the Information, supporting Affidavit,

and discovery provided by the Government adequately inform Defendant of the nature of the charge and the conduct at issue.

The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial. *United States v. Livingstone*, 576 F.3d 881 (8th Cir. 2009); *United States v. Hernandez,* 299 F.3d 984, 989–90 (8th Cir.2002), *cert. denied,* 537 U.S. 1134 (2003).  It is not a discovery device and may not be used to obtain the Government's evidence, legal theories, witness testimony, or trial strategy. *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009); *See United States v. Wessels,* 12 F.3d 746, 750 (8th Cir.1993), *cert. denied,* 513 U.S. 831  (1994) *United States v. Hester*, 917 F.2d 1083- 84 (8th Cir.1990).

The Information tracks the language of 18 U.S.C. § 111(a)(1), identifies the charged offense, specifies the relevant date and location, and provides constitutionally sufficient notice of the conduct alleged as well as the numerous conjunctive bases for criminal liability under the statute. The Berger Affidavit further sets forth the factual basis supporting the charge, including Defendant's interactions with federal officers, the vehicle pursuit, Defendant's interference with the officers' movements, and the resulting collision.

Moreover, the Government has produced extensive discovery, including surveillance footage, law-enforcement video recordings, investigative reports,

witness statements, and Defendant's recorded post-*Miranda* interview. Defendant's motion itself demonstrates detailed knowledge of the Government's evidence, as Defendant challenges specific statements contained in the Berger Affidavit, relies upon video recordings, and cites portions of Defendant's own recorded statements  Such familiarity with the facts underlying the charge confirms that Defendant possesses more than sufficient information to prepare a defense and cannot plausibly claim surprise regarding the nature of the allegations. Accordingly, Defendant's request should be denied.

To the extent Defendant seeks additional detail regarding the Government's evidence, witness testimony, legal theories, or anticipated proof at trial, such requests exceed the proper scope of a bill of particulars and constitute an improper attempt to obtain discovery beyond that required by the Federal Rules of Criminal Procedure. See *Wessels*, 12 F.3d at 754.

## CONCLUSION

As such, the Information is facially sufficient, properly alleges violations of 18 U.S.C. § 111(a)(1), and is supported by probable cause. Defendant's challenges to the Berger Affidavit, the Government's evidence, and the conduct of law enforcement depend upon disputed factual issues that cannot be resolved on a Rule 12 motion and are reserved for trial. The Government's

conduct was lawful and consistent with routine law-enforcement activity. Defendant fails to establish any basis for dismissal, an evidentiary hearing, a bill of particulars, additional discovery, or relief under the narrow doctrine of outrageous government conduct, and Defendant's motions should be denied in their entirety.

Dated: June 4, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/William L. Richards*
BY: William L. Richards
Attorney ID No.: 5445002NY
Special Assistant U.S. Attorney
300 South 4th Street, Suite 600
Minneapolis, MN 55415
T: 612.664-5600| C: 202-230-8076
Email: William.Richards@usdoj.gov