**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| United States of America, | Case No. 26-mj-56 (JNE/DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Christina Rank, | |
| Defendant. | |

---

This matter is before the Court on Defendant Christina Rank's Motion for Order to Show Cause (Doc. 32), Motion for Evidentiary Hearing (Doc. 33), Motion for Discovery (Doc. 34), Motion for Disclosure (Doc. 35), Motion for Discovery and Inspection (Doc. 37), Motion to Dismiss (Doc. 48), Motion for Hearing (Doc. 49), and Motion for Bill of Particulars (Doc. 51).

For the reasons explained below, the Court denies without prejudice Ms. Rank's Motion for Order to Show Cause (Doc. 32), Motion for Evidentiary Hearing (Doc. 33), Motion to Dismiss (Doc. 48), and Motion for Hearing (Doc. 49). The Court grants in part and denies in part Ms. Rank's Motion for Discovery (Doc. 34) and her Motion for Discovery and Inspection (Doc. 37). Finally, the Court denies Ms. Rank's Motion for Disclosure (Doc. 35) and grants Ms. Rank's Motion for Bill of Particulars (Doc. 51).

## BACKGROUND

Ms. Rank is charged by Misdemeanor Information of one count of Assaulting, Resisting, or Impeding a Federal Officer in violation of 18 U.S.C. § 111(a)(1). (*See*

1

*generally* Doc. 17.) Ms. Rank's charge stems from a vehicle collision on the morning of January 12, 2026. (Doc. 1-1 ¶ 5.)[1] According to the government, Ms. Rank "caused a collision" with federal agents when she blocked an Immigration and Customs Enforcement ("ICE") vehicle from entering a parking lot with her own vehicle, during a time ICE was conducting immigration enforcement operations in Inver Grove Heights, Minnesota. (*Id.* ¶ 7.) On January 23, 2026, the government charged Ms. Rank by a one-count Complaint, alleging that she did "forcibly oppose, impede, or interfere" with federal officers engaged in the performance of their official duties in violation of 18 U.S.C. § 111(a)(1). (Doc. 1 at 1.) Subsequently, the government recharged Ms. Rank by a one-count Misdemeanor Information alleging that she "did forcibly assault, resist, oppose, impede, intimidate, and interfere" with federal officers engaged in the performance of official duties in violation of 18 U.S.C. § 111(a)(1). (Doc. 17 at 1.)

On May 7, 2026, the Court held an evidentiary hearing on Ms. Rank's pretrial motions found at Docket 32, 33, 34, 35, and 37. (Docs. 47 (Minutes), 52 (Transcript).) Special Assistant United States Attorney William L. Richards III, Esq., appeared on behalf the government. Bruce Nestor, Esq., appeared on behalf of Ms. Rank, who was present at the hearing. At the hearing, the Defendant offered, and the Court accepted into evidence, Exhibit 1 (social media posts concerning Ms. Rank's self-surrender by former Attorney General Pamela Bondi and the Department of Homeland Security); Exhibit 2 (cellphone video excerpts of January 12, 2026 encounter); Exhibit 3 (same); Exhibit 4 (1-second video

---

[1] At the May 7, 2026 hearing, the government clarified that the Information incorporated the factual basis laid out in the earlier-filed Complaint. (*See* Doc. 52 at 11.)

of Ms. Rank's vehicle); and Exhibit 5 (surveillance video of the collision). (*See* Doc. 52 at 9, 12.) After the hearing, Ms. Rank submitted her motions found at Docket 48, 49, and 51. The government resists each of Ms. Rank's motions. (*See* Docs. 44, 45, 53.)

**DISCUSSION**

## I.    MS. RANK'S MOTION FOR BILL OF PARTICULARS IS GRANTED.

The Court first considers Ms. Rank's Motion for Bill of Particulars (Doc. 51). Through this Motion, Ms. Rank moves the Court to order the government to file a bill of particulars, detailing the charge it brings against her, the statutory language under which the charge is brought, and a summary of the factual basis for those charges. (*See generally* Doc. 51.) This is necessary, avers Ms. Rank, because the January 23, 2026 Complaint alleges that Ms. Rank "did forcibly oppose, impede, or interfere" (Doc. 1 at 1) with federal agents in violation of 18 U.S.C. § 111(a), but the February 4, 2026 Information alleges that Ms. Rank "did forcibly *assault*, *resist*, oppose, impede, *intimidate*, and interfere" with federal officers in violation of the same statute. (Doc. 17 at 1, emphasis added.)  That Information includes no factual basis for the charge. (*See generally id*.) Because the Information incorporates the factual allegations in the Complaint (*see* Doc. 52 at 11) but includes different charging language, Ms. Rank brings this Motion to determine whether the Information is duplicitous by charging two offenses in a single count, such that dismissal under Rule 12(b)(3)(B)(i) would be appropriate. Absent a bill of particulars, says Ms. Rank, she is unable to determine the nature and scope of the charges against her, or prepare an adequate defense on her behalf. The government, for its part, objects. (Doc. 53.) It argues that Ms. Rank is not entitled to a bill of particulars because the Information, the

3

Complaint's supporting Affidavit, and discovery produced by the government adequately explain the nature and scope of the charge.

"A bill of particulars is a formal, detailed statement of the claims or charges brought by a plaintiff or prosecutor." *United States v. Belfrey*, No. 14-373 (ADM/TNL), 2016 WL 1301085, at *2 (D. Minn. Apr. 1, 2016) (internal citations omitted). Its purpose is "to inform the defendant of the nature of a charge with 'sufficient precision to enable him to prepare for trial' and 'to avoid or minimize the danger of surprise at trial.'" *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009) (quoting *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002)). "However, a bill of particulars is not a tool for discovery and 'is not to be used to provide detailed disclosure of the government's evidence at trial.'" *Belfrey*, 2016 WL 1301085, at *2 (quoting *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993)).

The decision to order a bill of particulars is left to the broad discretion of the trial court. *See* Fed. R. Crim. P. 7(f); *United States v. Maull*, 806 F.2d 1340, 1345 (8th Cir. 1986) ("A denial of a bill of particulars is within the discretion of the trial court and is reversible only for an abuse of discretion."). While Rule 7(f) provides no guidance as to *how* a court should decide whether or not to order the government to file a bill of particulars, *Belfrey*, 2016 WL 1301085, at *2, the Eighth Circuit instructs that "[s]o long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion." *Maull*, 806 F.2d at 1345-46. "Accordingly, at the pre-trial stage, courts considering whether to grant a motion for a bill of particulars ask whether the

4

defendant has been adequately informed of the charges such that he can prepare a defense and avoid surprise at trial." *Belfrey*, 2016 WL 1301085, at *2.

In this case, the Court finds that a bill of particulars is necessary to ensure that Ms. Rank is adequately informed of the charge against her, and to protect her from unfair surprise should this case proceed to trial. As Ms. Rank observes, the word "assault" is included nowhere in the language of the Complaint, or the supporting Affidavit. (*See generally* Docs. 1, 1-1.) And at the motion hearing, the government agreed that the factual basis for the Information—the operative charging document—was the Affidavit in support of the Complaint. (Doc. 52 at 11.) That Affidavit says that Ms. Rank "caused a collision with the DOs' car" when she, allegedly, blocked the entrance to the parking lot with her vehicle. (Doc. 1-1 ¶ 7.) However, the Information charges Ms. Rank with forcible "assault" of a federal officer in violation of 18 U.S.C. § 111(a). (Doc. 17 at 1.) It is hard to imagine how blocking an entrance, standing alone, could be an assault. *Accord* 8th Cir. Model Jury Instructions (Criminal) § 6.18.111 (2025) ("An 'assault' is any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm.") Given this, it would be understandably difficult for a defendant like Ms. Rank to know the factual underpinning for the charge of assault.

Though it is true that the government has already provided some discovery, that discovery in no way clarifies the charge the government brings. That clarity matters. And here, a bill of particulars will not risk detailed disclosure of the government's evidence or otherwise compel discovery to which Ms. Rank is not entitled. It will, instead, clarify

evidence that has already been produced and inform Ms. Rank of the charges against her with "sufficient precision to enable [her] to prepare for trial." *Livingstone*, 576 F.3d at 883. Accordingly, and in its broad discretion, Court finds that a bill of particulars—including the charge, the statutory language under which the charge is brought, and the factual basis for that charge—is warranted. The Court grants Ms. Rank's Motion for a Bill of Particulars.

## II.     MS. RANK'S MOTION FOR DISCOVERY UNDER RULE 16 IS GRANTED IN PART AND DENIED IN PART.

The Court next turns to Ms. Rank's request for Discovery under Rule 16 (Doc. 34). Through this Motion, Ms. Rank requests discovery related to a staged photograph of her self-surrender on January 28, 2026, including:

(1) "Disclosure of the identity of any DHS agents, U.S. Marshal personnel, Department of Justice Personnel, or other government personnel who participated in arranging, taking, or appearing in the staged photo of Ms. Rank after her self-surrender on January 28, 2026;

(2) Disclosure of any communications by and between any officials at the Department of Justice or DHS regarding the publication of Rank's photo by Attorney General Bondi's X account or DHS's X account, or the timing of Ms. Rank's charging and self-surrender as part of a group of individuals to coincide with the planned visit of Attorney General Bondi to Minnesota;

(3) [and] Documents, recordings or summaries of directions provided to United States Attorneys by Deputy Associate Attorney General Aakash Singh to prioritize prosecution of protester cases to be coupled with issuing press releases, "blasting out" the filing of charges, including any reports or responses to said directions by the United States Attorney's Office for Minnesota."

(Doc. 34 at 19.) Ms. Rank requests this discovery to support her argument that the government's publication of the staged photo of her self-surrender served no legitimate law enforcement purpose, inappropriately invaded her privacy, endangered her safety, and

jeopardized her right to a fair trial. The government objects to the provision of this material. (*See generally* Doc. 45.) It argues that the discovery sought is neither relevant to the crime charged nor material to Ms. Rank's defense and so shielded from discovery under Rule 16. The government also argues that Rule 16 does not require the government to "hunt" for documents across multiple agencies, and that in any event, internal reports and memoranda are shielded from discovery by the work-product doctrine.

It is true that "[c]riminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). Accordingly, in most situations, "a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government." *Id*. One such rule, Federal Rule of Criminal Procedure 16, requires the government to disclose a defendant's relevant written or recorded statements; relevant results or reports of physical or mental examinations; and documents within the government's possession, custody, or control that belonged to the defendant or that the government plans to use in its case-in-chief. *See* Fed. R. Crim. P. 16(a).

The Court grants in part and denies in part Ms. Rank's Motion for Discovery under Rule 16. The Court grants in full Ms. Rank's requests made in paragraph (1) regarding the disclosure of identities of all government personnel involved in the staged photo of Ms. Rank's January 28, 2026 self-surrender, and her request made in paragraph (2) regarding the disclosure of communications by and between government officials at the Department of Justice and the Department of Homeland Security regarding the publication of the photo on X,  and those same communications concerning the coincidence of Ms. Rank's charging

and self-surrender with former United States Attorney General Pamela Bondi's visit to this District the same day. Because the far-reaching publication of Ms. Rank's self-surrender by top-ranking government officials goes to her right to a fair trial, Court finds these requests relevant to Ms. Rank's defense under Rule 16.[2] However, the Court denies Ms. Rank's request for

> "[d]ocuments, recordings or summaries of directions provided to United States Attorneys by Deputy Associate Attorney General Aakash Singh to prioritize prosecution of protester cases to be coupled with issuing press releases, "blasting out" the filing of charges, including any reports or responses to said directions by the United States Attorney's Office for Minnesota."

(Doc. 34 at 19.) The Court finds this request overbroad and of limited relevance. Further, the Court agrees with the government that this material is shielded by the work-product doctrine because it includes "counsel's mental impressions, conclusions, opinions or legal theories." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (holding that "opinion work produce enjoys almost absolute immunity[.]").

## III.   MS. RANK'S MOTION FOR DISCOVERY AND INSPECTION IS GRANTED IN PART AND DENIED IN PART.

The Court next considers Ms. Rank's Motion for Discovery and Inspection (Doc. 37) under Rule 16(a)(1)(E). Through this request, Ms. Rank requests a broad range of

---

[2] Defendant's Exhibit 2 shows that by 12:53 p.m. on January 28, 2026, former Attorney General Pamela Bondi's X post had 3.3 million views, twelve-thousand comments, and 7.4 thousand shares. (Doc. 36 at 4.) The post includes Ms. Rank's full legal name, a clear photograph of her face, and a caption indicating that she is a "rioter." (*Id*. at 3, 4, 5.) The Department of Homeland Security's similar post, which also includes a photo of Ms. Rank and her full legal name, had 98.4 thousand views by 3:57 p.m. on January 28, 2026. (*Id*. at 6.) It includes a caption that indicates Ms. Rank is a "violent Anti-ICE anarchist" fighting to keep "rapists, murders [sic], drug dealers, and predators in [her] community." (*Id*.)

discovery related to federal agents' communications and actions surrounding her January 12, 2026 arrest. The government argues that it has complied with Ms. Rank's requests to the extent she seeks material within the ambit of Rule 16 and the Jencks Act. (*See* Doc. 44.) To the extent she seeks other materials, the government contends that her requests are overbroad and outside the scope of any legal authority. The Court grants in part and denies in part Ms. Rank's Motion.

Finding that the following material is relevant to her defense under Rule 16, the Court grants Ms. Rank's Motion as it relates to her requests for:

- "Complete and unedited video, audio, and photographic footage or recordings from any government officer, agent or employee that was involved in the January 12, 2026, incident involving Ms. Rank during the time of the incident alleged in the Information;

- Copies of all radio traffic, dispatch records, cell phone communications, license plate checks, address look-ups, and any other communications between agents and law enforcement personnel regarding this incident, whether such data is stored on a government or private device or other storage media;

- Any communications or documentation that federal agents were performing immigration enforcement operations at the time they first encountered Ms. Rank on January 12, 2026, and/or that they returned to the Concord Education Center after departing it for the purpose of engaging in immigration enforcement operations."

(Doc. 37 at 1, 2.) The Court clarifies Ms. Rank's granted request to include agents' text messages, and messages derived from other service channels, related to Ms. Rank's arrest. Because the foregoing material pertains directly to the circumstances of her arrest and alleged obstruction of federal immigration enforcement, the Court finds this discovery

relevant to Ms. Rank's defense under Rule 16. To the extent Ms. Rank also seeks information related to

> "each federal agent who had contact with Ms. Rank or were involved in her arrest, information for their personnel files related to prior allegations of misconduct, excessive use of force, or dishonesty, and a complete criminal history for each agent. This would include all disciplinary files, Internal Affairs files, adverse findings regarding credibility or fitness, any other adverse performance assessments for any of the aforementioned agents or officers"

(Doc. 37 at 2), the Court finds such discovery to be covered under *Brady* and *Giglio* and grants this request as a matter of course. The Court finds all other of Ms. Rank's requests in this Motion to be overbroad and of insufficient relevance to Ms. Rank and denies them accordingly.

## IV.   MS. RANK'S MOTION FOR DISCLOSURE IS DENIED.

The Court next considers Ms. Rank's Motion for Disclosure (Doc. 35), through which she seeks discovery demonstrating that ICE officers acted in threatening and retaliatory ways against citizen observers during Operation Metro Surge. (*See* Doc. 35 at 8.) This includes photos of "any person" accused of impeding federal immigration enforcement, documentation of license plates entered into law enforcement databases, lists of all persons detained and arrested by federal agents, video footage known to or possessed by the government, all spanning the dates of December 1, 2025 to February 2, 2026— among other requests. (*Id.*) Ms. Rank argues that this discovery is relevant to under *Brady*, *Giglio*, and Rule 16(a)(1)(E)(i) because it bears on the purported motive of federal agents to harass and retaliate against civilian observers who sought to document ICE activity during Operation Metro Surge. Ms. Rank further argues that this material is relevant to her

defense that the federal agents she is alleged to have impeded were not, in fact, engaged in their official course of federal activity but rather on a "frolic" of their own. (Doc. 52 at 24); *see United States v. Drapeau*, 644 F.3d 646 (8th Cir. 2011). The government objects, arguing that Ms. Rank's Motion requests immaterial discovery that it is under no obligation to produce.

The Court finds Ms. Rank's requested discovery overbroad and of limited relevance. Its connection to her own case and potential defenses is too attenuated to merit production under Rule 16, and outside *Brady* and *Giglio*'s purview. These requests capture swaths of information implicating scores of people, strangers to Ms. Rank, over a three-month period. While Ms. Rank's theories may not be totally without merit, the vast breadth of discovery she requests is mismatched to the sparse relevance she describes. To the extent such discovery is relevant to Ms. Rank, the Court determines that its grant of her alternate motions suffices.

## V.    MS. RANK'S MOTION FOR ORDER TO SHOW CAUSE IS DENIED WITHOUT PREJUDICE.

The Court next turns to Ms. Rank's Motion for an Order to Show Cause (Doc. 32). Through this Motion, Ms. Rank moves the Court to issue a show cause order as to why the government should not be held in contempt and sanctioned for violating the Court's sealing order (Doc. 4) based on former Attorney General Pamela Bondi's X post previously discussed, and based on a press release by United States Attorney for the District of Minnesota, that, per Defendant, contradicted the claims made in Ms. Rank's Complaint.

(Doc. 32 at 3.)[3] In support of her Motion, Ms. Rank contends that the social media post of her self-surrender violated the Court's sealing order by publicizing her name, image, and the nature of charges against her. But sealing order aside, she says, the Court should still sanction the government under its inherent authority for abuse of the judicial process. Ms.  Rank argues that the posts on X were a deliberate publicity stunt which inappropriately cast Ms. Rank as guilty before conviction, and potentially intimidating witnesses such that sanctions are appropriate. The government argues that Ms. Rank's motion should be denied because the sealing order was not violated, or whatever violation did occur was only *de minimu*s; because civil contempt is not an appropriate remedy; and because Ms. Rank has not demonstrated a basis by which the Court could exercise its inherent power to impose sanctions. (*See* Doc. 45)

The Court denies Ms. Rank's motion for an evidentiary hearing without prejudice. This is because, at this point in litigation, the record lends inadequate support to the requests Ms. Rank makes. However, through this Order, the Court compels discovery from the government that may alter the record, and the Court's analysis. At the May 7, 2026 hearing, Defendant's counsel indicated the same—that the requested discovery would bear on the necessity for an order to show cause. (*See* Doc. 52 at 13.) Accordingly, the Court denies the Motion without prejudice, preserving Ms. Rank's ability to refile upon an updated evidentiary record—if warranted.

---

[3] Defendant cites to a Department of Justice press release that has since been removed from the government's webpage.

## VI.   MS. RANK'S MOTION TO DISMISS AND FOR AN EVIDENTIARY HEARING ARE DENIED WITHOUT PREJUDICE.

Finally, the Court considers Ms. Rank's Motion to Dismiss (Doc. 48) and Motion for Hearing (Doc 49). Through her Motion to Dismiss, Ms. Rank moves the Court to dismiss the Information pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), or at least the allegation that she committed a forcible assault on a federal agent for failure to state an offense. (*See* Doc. 49.) She argues that the government has failed to state an offense and is unable to prove its case beyond a reasonable doubt based on existing video evidence. Alternatively, she requests an evidentiary hearing (Doc. 49) to develop the record as to the source of the information contained in the Affidavit upon which the Complaint was based. (Doc. 48 ¶ 14.) Ms. Rank also indicates that her Motion to Dismiss may be supported by forthcoming evidence on the basis of outrageous government conduct. The government, for its part, argues that Ms. Rank's requests to dismiss for outrageous government conduct or lack of probable cause are meritless. (*See* Doc. 53.)

At this point in litigation—absent a more robust evidentiary record—dismissal is not warranted. The Court cannot determine that, as a matter of law, the government is "incapable of proving its case beyond a reasonable doubt" based on the record before it. *See United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994). If discovery produced pursuant to this Order alters that record, Ms. Rank may refile her motion. But for now, the Court finds that the dismissal is not warranted. And so, it denies Ms. Rank's Motion without prejudice. Because the Court finds an evidentiary hearing unnecessary to determine the

question of dismissal at this point, Court also denies without prejudice Ms. Rank's Motion

for an Evidentiary Hearing.

### ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS**

**ORDERED** that:

1. Defendant Christina Rank's Motion for Order to Show Cause (Doc. 32) is **DENIED WITHOUT PREJUDICE**.

2. Defendant Christina Rank's Motion for an Evidentiary Hearing (Doc. 33) is **DENIED WITHOUT PREJUDICE**.

3. Defendant Christina Rank's Motion for Discovery under Rule 16 (Doc. 34) is **GRANTED IN PART** and **DENIED IN PART.** Ms. Rank's Motion is granted insofar that she seeks:

   a. Disclosure of the identity of any DHS agents, U.S. Marshal personnel, Department of Justice Personnel, or other government personnel who participated in arranging, taking, or appearing in the staged photo of Ms. Rank after her self-surrender on January 28, 2026;

   b. Disclosure of any communications by and between any officials at the Department of Justice or DHS regarding the publication of Rank's photo by Attorney General Bondi's X account or DHS's X account, or the timing of Ms. Rank's charging and self-surrender as part of a group of individuals to coincide with the planned visit of Attorney General Bondi to Minnesota.

   Ms. Rank's Motion is denied insofar as she seeks all other materials.

4. Defendant Christina Rank's Motion for Disclosure (Doc. 35) is **DENIED**.

5. Defendant Christina Rank's Motion for Discovery and Inspection (Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** insofar that Ms. Rank requests:

   a. Complete and unedited video, audio, and photographic footage or recordings from any government officer, agent or employee that was involved in the January 12, 2026, incident involving Ms. Rank during the time of the incident alleged in the Information;

14

b. Copies of all radio traffic, dispatch records, cell phone communications, license plate checks, address look-ups, and any other communications between agents and law enforcement personnel regarding this incident, whether such data is stored on a government or private device or other storage media. This includes text messages and other messaging service channels;

c. Any communications or documentation that federal agents were performing immigration enforcement operations at the time they first encountered Ms. Rank on January 12, 2026, and/or that they returned to the Concord Education Center after departing it for the purpose of engaging in immigration enforcement operations;

d. Any communications or documentation that federal agents were performing immigration enforcement operations at the time they first encountered Ms. Rank on January 12, 2026, and/or that they returned to the Concord Education Center after departing it for the purpose of engaging in immigration enforcement operations, insofar that the Government has not already produced said material.

This includes text messages and messages derived from other service channels used by agents related to Ms. Rank's arrest. Ms. Rank's Motion is **DENIED** insofar that she requests all other materials.

6. Defendant Christina Rank's Motion to Dismiss (Doc. 48) is **DENIED WITHOUT PREJUDICE**.

7. Defendant Christina Rank's Motion for Hearing (Doc. 49) is **DENIED WITHOUT PREJUDICE**.

8. Defendant Christina Rank's Motion for a Bill of Particulars (Doc. 51) is **GRANTED**. A bill of particulars shall be filed no later than **July 17, 2026**.

The Court will hold a status conference with the parties for **July 24, 2026 at 2:00 p.m.** in **Courtroom 6B of the Warren E. Burger Federal Courthouse** to discuss the timeline for the ordered disclosures, additional proceedings, and trial. The Court excludes time between now and the forthcoming status conference from the Speedy Trial Act in the

15

interest of justice in order to allow the parties adequate time to prepare this matter. 18 U.S.C. § 3161(h)(7)(A).


Date: July 9, 2026                                   *s/Douglas L. Micko*
                                                      DOUGLAS L. MICKO
                                                      United States Magistrate Judge